# Carter *v.* Henderson & Company, Limited, Appellant.

*Pleading—Statement—Allegata and probata—Appliance—Pilaster—Negligence.*

1. Where in an action against an employer the negligence charged is failure to provide safe and suitable appliances, and a defective pilaster in a building is averred as the immediate cause of the accident, if the defendant makes no objection to the evidence offered in support of the averment as to the defective condition of the pilaster as an appliance, he may not be heard at the end of the trial to ask for binding instructions on the ground that the allegata and probata do not agree.

*Negligence—Evidence—Charge—Introduction of improper theory into charge.*

2. Where in a negligence case the plaintiff's testimony supports one theory as to the cause of the accident, while the defendant's testimony supports an entirely different theory, it is reversible error for the trial judge to introduce into his charge a third and an entirely independent theory of his own, which is not supported by any evidence in the case.

*Negligence—Evidence—Independent contractor.*

3. Where in an accident case the defendant alleges that the improper appliance which was alleged to have caused the accident had been built by a subcontractor, and this allegation is based on evidence wholly in parol, the question as to whether there was an independent contract is for the jury although the evidence is uncontradicted, since it involves the credibility of witnesses.

Argued Jan. 18, 1909. Appeal, No. 218, Jan. T., 1908, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1905, No. 993, on verdict for plaintiff in case of James Carter v. Henderson & Company, Limited. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before McMICHAEL, P. J.

The defendant offered the following point:

2. The allegata and probata do not agree, as there is no evidence of any failure on the part of the defendant to provide safe and proper appliances. *Answer:* Refused. [2]

Plaintiff presented this point:

8. Although there had been an independent contractor, the defendant would, nevertheless, be responsible, if he continued to exercise control over the method and manner of doing the work; or (b) if he interfered with such subcontractor, and assumed direction of the work or (c) if such subcontractor performed the work under the direction of the defendant or his representative. *Answer:* That, I think, is the law. The other points I decline. [3]

The court charged in part as follows:

[If the mortar was not dry, was spongy, it is for you to say whether or not that was the cause of this accident. I do not leave it as a question of fact for you to say whether that mortar was improperly mixed or of bad materials, for there is no evidence on that. But consider this: Was or was not the mortar dry in the wall when the truss was on there.] [4]

[I at any rate call your attention to the third view I have of the case which will be for your determination, and that is that the stone masons and stone setters built their wall according to the specifications, according to the contract, but that the trusses were placed upon the wall when the mortar was not dry, and that as a result of that the pilaster buckled and bulged perhaps, or at any rate part of it gave way and slid off, and that the other face of the wall was slightly disrupted. You will remember the testimony of the man who

constructed that wall, that he built it according to the specifications with binder stones in, but that after the accident the front of the wall was slightly disrupted. I want you to consider this testimony very carefully. Now, what happened? Whose fault was it?

[As to the wall being built according to the specifications, I think I have called your attention to the fact that the architect and the supervisor and the man who constructed that wall testified to the fact that it was built according to specifications. There is no positive countervailing testimony as to that. I am bound to say that to you. But there is testimony from which you could, if you wish, draw the inference that the mortar was not dry. I think I have gone over that carefully. I cannot take it away from you, but I want to call your attention to the weight of the testimony and the preponderance of the testimony on which that point is in favor of the defendant.] [5]

[The construction of the contract is for me. Under this contract Henderson & Company who were the general contractors, had general control of the work. They owed a duty, not only to their own employees, but to all except trespassers who were there. They owed a duty to be careful. Did they discharge that duty? Did their superintendent—and that is a question of fact you will have to consider—was he careful? The only testimony I recollect as to the superintendent was that he gave the center, marked it on the metal cap which was above the stone cap which was on the top of the pilaster—he gave the center and the iron men put the iron work there. Just when he did that I do not recollect. There may be testimony, and that is for you. But was or was not Henderson & Company's superintendent careful to see that that pilaster was in good condition to bear the superincumbent weight?] [6]

Verdict and judgment for plaintiff for $15,934. Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for plaintiff; (2–6) various instructions and (8) refusal of defendant's motion for judgment non obstante veredicto.

*Frank P. Prichard,* with him *James Wilson Bayard,* for appellant.—Plaintiff, under a statement of claim in which the only specific negligence alleged was the failure to provide safe and proper appliances, could not be allowed to recover, either upon the ground that the walls were negligently constructed of improper materials, or upon the ground that defendants had negligently allowed the plaintiff's employers to prematurely place the roof trusses upon the walls before the walls were dry: Griffiths v. Railroad Co., 25 N. Y. Supp. 812; Stewart v. DeNoon, 220 Pa. 154; Kough v. Penna. Railroad Co., 222 Pa. 175.

There was no evidence to justify the submission to the jury of the question whether the defendant had negligently allowed the roof trusses to be placed on the walls before the walls were dry.

If the question whether the wall was erected by independent subcontractors was material, the court, under the evidence, should have charged the jury that the wall was erected by an independent subcontractor, within the definition given by the court to the jury: Miller v. Merritt, 211 Pa. 127.

There was no evidence sufficient to justify the submission to the jury of the question whether the walls were negligently constructed by anyone.

*Charles F. Warwick,* with him *J. Edgar Butler* and *John J. McDevitt, Jr.,* for appellee.—The term " appliances " embraces not only machinery, premises and all the implements of every kind used in and about the business, but also the persons employed to operate them: 3 Wood on Railways, sec. 381; Johnson v. Ashland Water Company, 71 Wisconsin, 553 (37 N. W. Repr. 823); Honaker v. Board of Education, 24 S. E. Repr. 544; Bodie v. Ry. Co., 61 S. C. 468 (39 S. E. Repr. 715); Donahue v. R. R. Co., 32 S. C. 299 (11 S. E. Repr. 95).

It is settled that although the plaintiff's declaration may be general if it sufficiently refers to the accident, that the plaintiff was injured and the damage sustained, it is sufficient, although a more specific statement might have been required before trial: Quigley v. Penna. R. R. Co., 210 Pa. 162; Kirch-

ner v. Smith, 207 Pa. 431; Kroegher v. McConway & Torley Co., 149 Pa. 444; Baylor v. Stevens, 16 Pa. Superior Ct. 365; Trainor v. R. R. Co., 137 Pa. 148.

In the case now under discussion there has really been no variance; the case was tried entirely upon the theory that the pilaster was defective; whether in construction or premature use.

The case having been tried on this assumption, it should be considered on review as if the proofs had been made: Shannon v. McHenry, 219 Pa. 267; Stoner v. Erisman, 206 Pa. 600; Schmelzer v. Traction Co., 218 Pa. 29; Jones v. Freyer, 3 W. N. C. 365; Bolton v. King, 105 Pa. 78; Patton v. Railway Co., 96 Pa. 169; Quick v. Miller, 103 Pa. 67.

That courts have frequently suggested possible theories developed by the evidence is a well-known fact. In a very recent case, in fact, the theory was entirely founded upon the suggestion of the trial judge: Morgan v. Electric Co., 213 Pa. 151; Thomas v. Railroad Co., 194 Pa. 511.

OPINION BY MR. JUSTICE STEWART, April 12, 1909:

Plaintiff was a workman employed by a subcontractor who had engaged to erect and put in place the iron trusses and beams required by the specifications for the roof of a public school building which the defendant company had contracted to build. When the last of the trusses was about to be placed in position on the walls, something gave way, and the truss fell to the ground below, carrying with it the plaintiff who in the mishap was severely injured. He brought this action for damages against the defendant company, the general contractor, charging it in the statement filed with negligence in having failed to provide sufficient and proper appliances, and permitting certain supports for the roof of the building to be violently thrown to the ground. On plaintiff's part the case was tried on the theory that the proximate cause of the plaintiff's injuries was the negligent and defective construction of that part of the wall known as the pilaster, the angular projection of the wall on the top of which the iron truss was intended to rest for support. We need waste no time or

effort in considering whether a pilaster is an appliance. Clearly it is not, if we have regard to the etymology of the term " appliance," and there is nothing in the case to show that the word is used in common speech or technically to denote a pilaster. However this may be, the pilaster was the thing which the word " appliance," as used in the statement, was meant to denote. The word was inapt almost to the extent of being a misnomer; but allowing it the sense in which it was used in the statement involved no change in the cause of action, and consequently variance could not be asserted. If the defendant did not so understand it when the case was called for trial, and was not prepared for the issue as thus made up, a motion for continuance would have been in order, and the evidence offered by plaintiff should have been objected to as not supporting the averment. Defendant adopted neither course, but allowed the trial to proceed as though by mutual understanding pilaster was included within the meaning of appliance. Under these circumstances we think a refusal to give binding instructions for the defendant on the ground that the allegata and probata did not agree, was entirely proper.

It was developed as part of plaintiff's case that had the pilaster been constructed in conformity with the architect's specifications, it would have been more than adequate for the support of the truss. Defendant's evidence was to like effect. The whole effort on part of the plaintiff was to show that the pilaster had not been so constructed, and that the accident resulted in consequence of this want of conformity. Was the evidence on this point sufficient to carry the case to the jury? Briefly it was this. Two witnesses called by plaintiff testified that after the collapse they had examined the mortar in which the bricks and stones had been laid and described it as "dry and crumbly," both said it was in bad condition; one, that "it would crumble out like sand, was spongy;" the other, that "it was dry and crumbly, and in bad condition." This was followed by the testimony of an expert witness, called by plaintiff, who testified that had the mortar been made of the materials called for by the specifications, and mixed in the proportions required, when examined "it would

have been hard, and small particles would have been very hard to break, and sharp cutting edges on it." However unconvincing this testimony may have been to the mind of the court, and especially in view of the positive testimony adduced by the defendant, to the effect that the specifications had been strictly observed, it was for the jury to decide what weight they would give it. The court could not say, as matter of law, that if credited it would not support an inference that the wall had been defectively constructed. And yet, the trial judge disposed of the question in his charge in this way: "I do not leave it as a question of fact for you to say whether that mortar was improperly mixed or of bad materials, for there is no evidence on that." This was error. Had the fact been as here stated by the learned judge binding instructions to find for the defendant should have followed, since the plaintiff's whole contention was that the truss fell because the wall was unequal to the burden, and that this insufficiency resulted from the use of defective mortar in the construction. Instead of directing a verdict for the defendant, the judge introduced a theory of his own as to the cause of the accident, wholly different from any that had been suggested by either of the parties, and submitted it to the jury to be passed upon by them, as the governing question in the case, as will appear from the following extract from the charge: "The arguments of counsel through the case seem to have been, and that may be your view, that it was either the fault of the stone masons or the iron men. It is for you to say, but there is in my view—I at any rate call your attention to the third view I have of the case which will be for your determination, and that is that the stone masons or stone setters built their wall according to the specifications, according to the contract, but that the trusses were placed upon the wall when the mortar was not dry, and that as a result of that the pilaster buckled and bulged perhaps, or at any rate part of it gave way and slid off." At the conclusion of the charge counsel for defendant having excepted to the submission of the question whether the defendant had been careful to see that the pilaster was strong enough to bear the weight of the truss, the court there-

upon gave further instructions as follows: "On that point counsel having called my attention to it, the real question is whether the mortar was dry when the trusses were put on the pilaster, and if not, who was responsible for that." The theory here presented is that the wall fell under its burden because it was unseasoned, the mortar not having had time to dry. It may be that this theory was the correct one; but where was the evidence in the case to support it? Not a single witness testified that the wall was unseasoned, or that the mortar was not dry. But two witnesses testified to the condition of the mortar, and the only inference that can possibly be derived from their testimony is that the mortar was dry, but without binding strength because not properly prepared. Any finding by the jury on the question submitted would necessarily be pure and simple speculation. The instructions of the court with regard to this feature of the case are assigned for error in the fourth, fifth and sixth specifications, and these assignments are sustained.

The jury having found for plaintiff, a motion for judgment non obstante followed. One of the reasons urged in support of the motion was that the wall had been built by an independent subcontractor, that no liability, therefore, attached to the defendant. This point assumes as a fact what was found not to be a fact by the jury. The court was asked to instruct the jury that the wall had been built by an independent subcontractor. This instruction was refused very properly, because the evidence relied upon to establish such fact was wholly in parol, and this circumstance drew the question to the jury necessarily, notwithstanding the fact that the testimony in regard to it was uncontradicted. The court could go no further in this direction than to say to the jury—and this should have been said—that if they believed the testimony of plaintiff's witnesses then the party who had built the walls was an independent subcontractor within the meaning of that term as defined by the court. The credibility of the witnesses was for the jury.

Upon the review we have made of the case, it sufficiently appears without specifying further, that the case required a submission; not, however, for a choice between conflicting

theories, but for a determination of the facts in issue under the evidence in the case.

The judgment is reversed, and a venire de novo awarded.